**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TRANSPERFECT GLOBAL, INC., | Case No. 1:19-cv-03283 (DLC) |
| Plaintiffs, | |
| -against- | **STIPULATION AND [PROPOSED] ORDER REGARDING PROTOCOLS FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION (ESI)** |
| LIONBRIDGE TECHNOLOGIES, INC., and H.I.G. MIDDLE MARKET, LLC, | |
| Defendants. | |

Subject to the approval of the Court, IT IS HEREBY STIPULATED AND AGREED, by and between TransPerfect Global, Inc. ("TransPerfect" or "Plaintiff"), Lionbridge Technologies, Inc. ("Lionbridge") and H.I.G. Middle Market, LLC ("HIG," together with Lionbridge, "Defendants") through their respective counsel, that the following provisions of this protocol ("ESI Protocol") shall govern the preservation, collection and production of electronically stored information ("ESI") and hard-copy documents in the above-captioned litigation:

1.      **PURPOSE**

The production of documents and ESI by the Parties also shall be subject to the provisions of orders concerning confidentiality, privilege, and/or protected health information as agreed to among the Parties and/or entered by the Court.

Nothing in this Order shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections to the discoverability, admissibility, or confidentiality of documents.

2.      **DEFINITIONS**

a.      **"Confidentiality Designation"** means the legend affixed to Documents or ESI for confidential or highly confidential information as defined by, and subject to, the terms of the confidentiality order agreed to and/or entered by the Court in this litigation.

b.      **"Document"** is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). The term "document" shall include hard-copy documents, electronic documents, and ESI as defined herein.

c.      **"Electronic Document or Data"** means documents or data existing in electronic form at the time of collection, including but not limited to: e-mail or other means of electronic communications, intant messaging programs (e.g. Telegram, Signal, Bloomberg), business collaboration platforms (e.g., Slack, Sharepoint, Teams, etc.), text messages, voicemails, digital audio recordings, social media messages (e.g., Facebook messenger, Whatsapp, Wechat), social media platform content (e.g., Facebook, Instagram, etc.), word processing files (e.g., Microsoft Word), computer slide presentations (e.g., PowerPoint or Keynote slides), spreadsheets (e.g., Excel), enterprise databases (e.g. CRM databases, Quickbooks or other accounting databases), and image files (e.g., PDF).

d.      "**Electronically stored information**" or "**ESI,**" as used herein, includes Electronic Documents or Data, and computer-generated information or data, stored in reasonably useable form on storage media located on computers, email and file servers, disks, drives, mobile devices, tablets, social media websites, cloud document repositors, business collaboration platforms, websites, or other real or virtualized devices or media and is readily available in the ordinary course of business.  Absent a showing of good cause by the requesting party, the parties need not provide

discovery of ESI from sources that they identify as not reasonably accessible because of undue

burden or cost. Accordingly, the following categories of ESI need not be preserved or collected:

1.   Deleted, slack (as distinct from Slack, see paragraph (c), *supra*), fragmented, or other data only accessible by forensics **[PLAINTIFF'S PROPOSAL:] (except that data reflecting dates of file creation, access, modification and/or transfer, including but not limited to LNK files and jump lists, shall not be deemed to be "only accessible by forensics") [DEFENDANTS' PROPOSAL: none]**;

2.   Random access memory (RAM), temporary files, or other ephemeral data that is difficult to preserve without disabling the operating system.

Nothing in this section limits a Party's right to petition the Court for appropriate allocation of

production costs if another Party requests, or the Court orders, production of ESI from sources that

the producing Party identifies as not reasonably accessible.

e.   **"Extracted Full Text"** means the full text that is extracted electronically from

native electronic files, and includes all header, footer, and document body information.

f.   **"Hard-Copy Document"** means documents existing in paper form at the time of

collection.

g.   **"Hash Value"** is a unique numerical identifier that can be assigned to a file, a group

of files, or a portion of a file, based on a standard mathematical algorithm applied to the

characteristics of the data set. The most commonly used algorithms, known as MD5 and SHA, will

generate numerical values so distinctive that the chance that any two data sets will have the same

Hash Value, no matter how similar they appear, is less than one in one billion.

h.   **"Load files"** means an electronic file containing information identifying a set of

paper-scanned images, processed ESI, or native format files, as well as the corresponding

Extracted Full Text or OCR text files, and containing agreed-upon extracted or user-created

metadata, as well as information indicating unitization (i.e., document breaks and document

relationships such as those between an email and its attachments) used to load that production set

into the document review platform of the Party receiving a production ("Receiving Party"), and correlate its data within that platform. A load file is used to import all image, native, and text files and their corresponding production information into a document database. The Producing Party shall produce a load file for all produced documents with each particular production in accordance with specifications provided herein.

i. "**Media**" means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

j. "**Metadata**" means: (i) information embedded in or associated with a native file that describes the characteristics, origins, usage, and/or validity of the electronic file; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system, (iii) information, such as Bates numbers, redaction status, privilege status, or confidentiality status created during the course of processing documents or ESI for production, and (iv) information collected during the course of collecting documents or ESI, such as the name of the media device on which it was stored, or the custodian or non-custodial data source from which it was collected. Nothing in this order shall require any party to manually populate the value for any metadata field appearing in Appendix A herein if such fields cannot be extracted from a Document, with the exception of the following: (1) BegDoc, (2) EndDoc, (3) BegAttach, (4) EndAttach; (5) Custodian, (6) Prod Volume; (7) Company; (8) Source; (9) Confidential; (10) Redaction; and (11) NativeLink fields (which may be populated by the party or the party's vendor) where applicable.

k.      "**Native Format**" or "**native file**" means the format of ESI in which it was generated and/or used by the Party Producing ESI or documents (the "Producing Party") in the usual course of its business and in its regularly conducted activities. For example, the native format of an Excel workbook is an .xls or .xslx file.

l.      "**Optical Character Recognition**" or "**OCR**" means the optical character recognition technology used to read the text within electronic images of paper Documents and create a file containing a visible, searchable text format of such Documents.

m.      **"Searchable Text"** means the native text extracted from an electronic document and any Optical Character Recognition text ("OCR text") generated from the electronic image of a paper Document.

## 3.      E-DISCOVERY LIAISON

The Parties will identify to each other liaisons who are and will be knowledgeable about and responsible for discussing their respective ESI ("E-discovery Liaisons"). Each Party's designated E-discovery Liaison(s) will be, or will have access to those who are, familiar with their Party's respective electronic systems and capabilities and knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

## 4.      IDENTIFICATION OF DOCUMENTS AND ESI

a.      The Parties agree to meet and confer to discuss (i) the identification of the custodial and noncustodial data sources containing potentially relevant ESI for potential collection, review, and production; (ii) additional parameters for scoping the review and production efforts (e.g., application of date ranges and search terms); (iii) potential use of tools, or techniques to cull the reviewed universe or introduce cost-saving efficiencies; (iv) the identification and production of

documents and ESI from custodial and non-custodial sources that do not require the use of search terms, tools, or techniques; (v) the method each Party proposes to use to identify and de-duplicate duplicate documents, and any exceptions to such de-duplication the Party proposes to implement; and (vi) the treatment of nonresponsive documents within parent-child families. The meet and confer between Plaintiffs and each Defendant will take place by ten (10) calendar days following entry of this Order.

b. In the event that any party identifies a particular source or type of responsive Data for which application of this Protocol would be unduly burdensome or impractical, the party identifying the source or type of responsive Data will promptly notify the other parties and the parties will meet and confer concerning appropriate modifications of this Protocol with respect to that source or type of responsive Data. For the avoidance of any doubt, all ESI should be DeNISTed prior to production; system and program files need not be processed, reviewed or produced.

c. The Parties further agree to meet and confer to the extent that this Order imposes any undue burden or expense on any Plaintiff or Defendant with respect to its response to any particular discovery request.

d. Nothing in this order shall be deemed to be a waiver of any Party's right to reasonably seek agreement from the other Parties, or a Court ruling, to modify proposed or previously agreed-to search terms, techniques, or tools (including any proposed as supplements) or object to discovery requests.

5.    **DEDUPLICATION**

a.    To the extent exact duplicate documents reside within a Party's ESI data set, the Party shall produce only a single, deduplicated copy of a responsive document. "Exact duplicate" shall mean bit-for-bit identity of the document content with exact hash value matches; so-called "near duplicates" will not be included within this definition.

b.    To the extent a Party de-duplicates its documents, it shall de-duplicate stand-alone documents or entire document families in their ESI sources by the use of MD5, SHA-1, or SHA256 hash values. Where any such documents have attachments, hash values must be identical for both the document plus-attachment (including associated metadata) as well as for any attachment (including associated metadata) standing alone.  No Party shall identify and/or eliminate duplicates based on manual review.

c.    Hard-Copy Documents shall not be eliminated as duplicates of ESI.

d.    If the Producing Party is de-duplicating documents across custodians, the identity of other custodians of de-duplicated items must be listed in the "All Custodians" field of the copy of the single record that is produced.

e.    If the Producing Party makes supplemental productions following an initial production, that Party also shall provide with each supplemental production an overlay file to allow the Receiving Party to update the "All Custodians" field. The overlay file shall include all custodians listed in the "All Custodians" field in prior productions and any custodians newly identified in the current supplemental production. The Producing Party shall use a uniform description of a particular custodian across all productions.

f.    Where multiple email messages are part of a single "thread," a Party is only required to produce the most inclusive message and need not produce earlier, less inclusive email messages that are fully contained, including attachments, within the most inclusive email message.

For the avoidance of doubt, only email messages for which the parent document and all attachments are contained in the more inclusive email message will be considered less inclusive email messages that need not be produced; if the later message contains different text (such as where the later message adds in-line comments to the body of the earlier message), or does not include an attachment that was part of the earlier message, the earlier message must be produced. No Party shall make the determination that multiple email messages belong to a single "thread" based on manual review.   The Parties will use their best efforts to agree upon criteria for "threading" emails during the meet-and-confer required by Paragraph 4(a) of this Order.   Where an email thread is withheld from production under a claim of privilege, and any email in the thread falls within the period for which the Parties have agreed not to produce a privilege log "by category" pursuant to Paragraph 6(j) of this Order, the Party's privilege log should reflect only the most inclusive message.   Notwithstanding the foregoing, if the most inclusive message of an email thread withheld under a claim of privilege is transmitted among different parties (whether in the to, from, cc: or bcc: fields) than any less inclusive message of the same email thread, the Party's privilege log should indicate all unique senders and recipients of each less inclusive message, in addition to the sender and recipient of the most inclusive message.

6.      **PRODUCTION FORMAT AND PROCESSING SPECIFICATIONS**

a.      <u>Standard Format</u>. Unless otherwise specified in Section 6(b) or pursuant to Section 6(j) below, the Parties shall produce documents in tagged image file format ("TIFF"). TIFFs of ESI shall convey the same information and image as the original document, including all commenting, versioning, and formatting that is visible in any view of the document in its native application. All hidden text will be expanded, extracted, and rendered in the TIFF file and, to the extent possible, the Producing Party will instruct its vendor to force off Auto Date. Any TIFFs produced shall be single-page, 300 DPI, Group IV TIFF files with corresponding extracted full

text/OCR and, to the extent possible, applicable metadata as specified in Appendix A. All metadata pertaining to dates and times will be standardized to Eastern Standard Time or Eastern Daylight Time (EST/EDT). Image file names will be identical to the corresponding Bates numbered images, with a ".tif" file extension. After initial production in image file format is complete, a party must demonstrate particularized need for production of ESI in its native format.

      b.    <u>Native Format</u>. Except as provided by Section 6(j) below, the Parties shall produce all spreadsheets, computer slide presentations, audio files, video files, and other file types that cannot be accurately represented in TIFF format in native format, provided, however, that the Parties will meet and confer regarding appropriate format of production for databases and structured data (e.g., Microsoft Access, Oracle, SQL, SAP or other proprietary databases). For each document produced in native format, a responding Party shall also produce a corresponding cover page in TIFF image format, specifying that the document has been "produced in native format" and endorsed with the Bates Number and Confidentiality Designation, if applicable, which will be inserted into the image population in place of the native file. When the native file is produced, the Producing Party shall preserve the integrity of the electronic document's contents, i.e., its original formatting and metadata.  Audio files should be produce in the native audio file format in which they were maintained in the ordinary course of business.  Produced native audio files should be accompanied by a reference file containing the name of the file and MD5 hash value for each produced file.  If the audio files are maintained in a non-standard format, they should be produced in .mp3 format.

      c.    <u>Color</u>. Documents containing color need not be produced in color.  The Producing Party will honor reasonable requests for a color image of a document, if the original document contains color necessary to understand the meaning or content of the document.

d.      <u>Embedded Objects</u>.  The Parties agree that embedded objects will remain embedded as part of the main document and not be extracted as an attached separate document.   However, any embedded objects that cannot be viewed in the main document and that the text is not extracted as part of the main document should be extracted and produced as separate attachments to the main document.  This would include audio and video files.  The Parties will use their best efforts to identify specific file extensions that should be extracted and produced as separate attachments during the meet-and-confer required by Paragraph 4(a) of this Order.

e.      <u>Load Files</u>. Each production of ESI and Documents shall be accompanied by Concordance or comma delimited load files (.dat and .opt) containing a field with the full path and filename to files produced in native format and also containing metadata fields identified in Appendix A, to the extent the information is available in the original ESI file and can be extracted without unreasonable burden using standard litigation support processing platforms (except for vendor-generated fields related to the litigation production, such as "BEGDOC", "ENDDOC", bases for redaction, and Confidentiality Designations).

f.      <u>.Txt Files</u>. For all documents containing extracted full text or OCR text, the Producing Party shall provide searchable document level .txt files (named using the Bates start/"BEGDOC"), which shall reside in the same file directory as the images for such documents.

g.      <u>Bates Numbering and Other Unique Identifiers</u>. Every item or file of ESI that is produced shall be identified by a unique page identifier ("Bates Number") and a Production Volume Number for any storage device (e.g., CD, USB, hard drive) containing such files. All Bates numbers will consist of an Alpha Prefix, followed by a numeric page index. There must be no spaces in any Bates number. Any numbers with less than 8 digits will be front padded with zeros to reach the required 8 digits. All ESI produced in TIFF format shall contain a unique Bates

Number on each page of the document, electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document. If a member of a document family that has otherwise been determined to be responsive cannot be technically processed (e.g., unsupported file format, file corruption, inaccessible password-protected document), those technical problems shall be identified and disclosed to the Receiving Party by production of a Bates-labeled slip sheet that states "Technical issue—file cannot be processed," along with a log identifying each such file; the associated metadata for the file with the technical problem shall be produced if technically possible. A Receiving Party thereafter may raise with the Producing Party any questions or concerns, and the Parties shall meet and confer to attempt to resolve any issues.

      h.    <u>Hard-Copy Documents</u>.  Except as otherwise set forth in this paragraph, the Parties agree that responsive paper documents shall be converted to single-page TIFF files, and produced following the same protocols set forth in Section 6(a) above, including the production of OCR text that is generated to make such documents searchable. Generally, all paper documents will be scanned and produced electronically, unless a Party establishes good cause for making such documents available via paper and reasonable access is provided to the opposing Party to review the documents directly. In scanning all Hard-Copy Documents, the parties should make reasonable efforts to logically unitize Hard-Copy Documents. The Parties will make their best efforts to unitize the documents correctly. Producing Hard-Copy Documents as provided herein does not change their character from Hard-Copy Documents into ESI. For Hard-Copy Documents, the Parties need only populate the following metadata fields: "BEGDOC," "ENDDOC," "PROD VOLUME," "CUSTODIAN," "COMPANY," "SOURCE," "CONFIDENTIAL," and "REDACTION," as well as "BEGATTACH" and "ENDATTACH" fields where applicable.

i.      <u>Confidentiality Designation</u>. To the extent any Document or ESI (or portion thereof) produced as a TIFF image in accordance with this Order is designated as confidential or highly confidential under the order concerning confidentiality agreed and/or entered in this litigation, the Producing Party will brand the required Confidentiality Designation in a corner of any TIFF images representing the produced item and in a consistent font type and size that does not obscure any part of the underlying image or Bates number, to the extent possible.

j.      <u>Privilege and Redaction Log</u>. If any document is fully withheld on account of privilege, to avoid the loss of context due to an "orphaned" email or attachment, the entire message-attachment shall still be produced with the withheld document slip-sheeted with a bates stamped TIFF image, and the bates number will be identified on the privilege log.  Privilege and redaction logs shall be produced in PDF format, and shall be accompanied by an Excel copy of the log.  Absent an order of the Court sequencing document discovery to be conducted in phases, or requiring certain document discovery to be completed before other document discovery, each Party may produce a single privilege log within 30 days of the conclusion of its rolling production of documents, or 90 days prior to the date ordered for the completion of fact discovery, whichever is earlier.  The PDF copy will be the official log of record.  The parties do not need to log any withheld documents or communications to or from outside counsel created after April 11, 2019. Subject to the exceptions that follow, the Parties may produce privilege logs "by category" pursuant to Local Civil Rule 26.2(c), provided that the producing Party identify the information required by Local Civil Rule 26.2(a) for each category of documents, namely: (i) the type(s) of document(s) in the category, e.g., letter or memorandum; (ii) the general subject matter of the documents in the category; (iii) the date range of documents in the category; and (iv) the author(s), addressees, and any other recipients of the documents in the category, indicating for each

individual her or his affiliation and relationship to the Parties.  Notwithstanding any other provision of this Order, the Parties may not produce a privilege log "by category" for documents sent, received, created or modified between September 1, 2017 and **[PLAINTIFF'S PROPOSAL:] December [DEFENDANTS' PROPOSAL:] November** 21, 2017 (the "Auction Period").  Any document from the Auction Period withheld on account of a claim of privilege must be individually identified in the Parties' logs, stating for each document the information required by Local Civil Rule 26.2(a).

  k. <u>Redactions</u>. A Party may use redactions to protect attorney-client or work product privileges consistent with any order concerning privilege agreed and/or entered in this litigation, or personally identifiable information contained in ESI. Other than as permitted by this Order or the order concerning confidentiality agreed and/or entered in this litigation, no redactions for relevance other than as required by law or statutory authority may be made within a produced document or ESI item. Documents produced with redactions shall identify in some manner (such as through highlighting in black or through the use of redaction boxes) the location and extent of redacted information.  The text that was redacted shall not be included in a redacted document's text file. Where a responsive document contains both redacted and nonredacted content, the Producing Party shall produce the remainder of the non-redacted portions of the document and the text/OCR corresponding only to the non-redacted portions. Email header information (e.g., date, subject line, etc.) should not be redacted unless it is independently privileged. The production of a document in a redacted form does not affect the Producing Party's obligation to timely assert and substantiate the assertion of privilege over the content in a privilege log. Redacted versions of spreadsheets, computer slide presentations, etc. may be produced with TIFF image files and OCR in lieu of a Native File, TIFF placeholder image and extracted text file.  Any metadata fields for

redacted documents that would reveal privileged information shall be excluded. Each Producing Party will make reasonable efforts to ensure that its discovery vendor, prior to conversion to TIFF, reveals non-privileged hidden data from redacted Native Files that are produced as TIFF image files and will be formatted so as to be readable.  (For example, column widths should be formatted so that numbers do not appear as "########".) The Parties shall honor reasonable requests for the production of particular redacted documents in other formats where the TIFF image is not reasonably usable.   During the pendency of the litigation, an electronic copy of all original unredacted documents shall be preserved without addition thereto, or modification, alteration (including but not limited to alteration of associated metadata) or deletion thereof.

l.     <u>Parent-Child Relationships</u>. The Parties acknowledge and agree that parent-child relationships within a document family (the association between an attachment and its parent document or between embedded documents and their parent) shall be preserved. Responsive non-privileged electronic documents attached to an e-mail or embedded within an electronic document and hardcopy documents attached or appended to a hardcopy document, are to be produced contemporaneously and sequentially immediately after the parent document.  Responsive non-privileged electronic documents attached to an email or embedded within other electronic documents and hard-copy documents attached or appended to hard-copy documents must be mapped to their parent by the beginning Bates number and immediately follow that parent file in the sequence of the production. Email attachments and embedded files or links "BEGATTACH" and "ENDATTACH" fields listing the unique beginning Bates number of the parent documents and ending number of the last attachment must be populated for each child and parent document.

m.      OCR. OCR software shall be set to the highest quality setting during processing.

n.      Deviation from Production Specifications. If a particular document or category of documents warrant a different format, the Parties will cooperate in good faith to arrange for a mutually acceptable production format.

o.      Productions from Other Proceedings. Notwithstanding anything to the contrary herein, the production of documents made by a Producing Party in other civil investigations, litigations, and/or administrative actions by federal (including Congressional), state, or local government entities, if relevant and responsive to the litigation at bar, shall be made in the format in which they were previously produced, including any previously produced metadata, load files, and accompanying text files.  This paragraph addresses the format of production only and does not impose any obligation to produce documents produced in other proceedings, and the parties reserve all rights to object to any request for documents produced in other proceedings.

p.      Use at Deposition. Any document produced in native that a party identifies and/or marks as an exhibit at a deposition must include as part of that identification or exhibit the produced corresponding cover page in TIFF image format, endorsed with document's Bates Number and Confidentiality Designation, as described in Section 6(a), above.

## 7.   PRODUCTION MEDIA

The Producing Party shall produce documents via secure FTP site where possible.  If delivery via secure FTP site is impractical due to file size, the Producing Party shall produce documents on readily accessible, computer or electronic media, including CD-ROM, DVD, external hard drive (with standard PC compatible interface), or such other readily accessible computer or electronic media as the Parties may agree (the "Production Media"). Each piece of Production Media shall be encrypted and assigned a production number or other unique identifying label ("Production Volume Number") corresponding to the date of the production of documents

on the Production Media as well as the sequence of the material in that production, and shall include (a) the name of the litigation and the case number; (b) the identity of the Producing Party; (c) the production date; (d) the Bates Number range of the materials contained on such Production Media item; and (e) the Production Volume Number of the Production Media. The Producing Party shall accompany all document productions with a transmittal cover letter identifying by Bates number the documents produced. If the Producing Party produces documents via secure FTP site, the Producing Party shall specify the date through which the materials will remain available via the secure FTP site and the Producing Party shall, within a reasonable time, accommodate requests from another Party or Parties that documents be reposted to the FTP site.

**8.      COST SHIFTING**

The costs of production pursuant to this Order shall be borne by the Producing Party. However, in agreeing to this Order, no Party waives or relinquishes any right or interest it may have under the Federal Rules of Civil Procedure, or other applicable local rules, to seek cost shifting or apportionment for the costs of electronic discovery.

**9.      THIRD-PARTY ESI**

a.      A Party that issues a non-Party subpoena (the "Issuing Party") shall include a copy of this Order and the order concerning confidentiality agreed and/or entered in this litigation with the subpoena and state that the Parties in the litigation have requested that third-Parties produce documents in accordance with the specifications set forth herein.  For third-party subpoenas already issued, the Issuing Party shall provide the receiving party with a copy of this Order and the order concerning confidentiality agreed and/or entered in this litigation promptly upon execution of this Order by the Parties.

b.      The Issuing Party shall produce a copy to all other Parties of any documents and ESI (including any metadata) obtained under subpoena to a non-Party.

c.      If the non-Party production is not Bates-stamped, the Issuing Party will endorse the non-Party production with unique Bates prefixes and numbering scheme prior to reproducing them to all other Parties.

## 10.     CLAWBACK PROCEDURES

Any party seeking to recall ESI pursuant to the [Section [x] of the Protective Order entered by the Court on [x]] shall follow the following procedure to ensure all copies of such ESI are appropriately removed from the Receiving Party's system:

a.      Locate each recalled Document in the document review/production database and delete the record from the database;

b.      If there is a native file link to the recalled Document, remove the native file from the network path;

c.      If the database has an image load file, locate the Document image(s) loaded into the viewing software and delete the image file(s) corresponding to the recalled document.  Remove the line(s) corresponding to the document image(s) from the image load file;

d.      Apply the same process to any additional copies of the Document or database, where possible;

e.      Locate and destroy all other copies of the Document, whether in electronic or hardcopy form.  To the extent that copies of the Document are contained on write-protected media, such as CDs or DVDs, these media shall be discarded, with the exception of production media received from the recalling party, which shall be treated as described under subparagraph 6;

f.      If the Document was produced in a write-protected format, the party seeking to recall the Document shall, at its election, either (i) provide a replacement copy of the relevant production from which the Document has been removed, in which case the receiving party shall discard the original production media; or (ii) allow the Receiving Party to retain the original production media, in which case the Receiving Party shall take steps to ensure that the recalled document will not be used; *and*

g.      Confirm that the recall of ESI under this procedure is complete by way of letter to the party seeking to recall ESI.

## 11.     BEST EFFORTS COMPLIANCE AND DISPUTES

The Parties agree to use their best efforts to comply with and resolve any differences concerning compliance with any provision/s of this Order. If a Producing Party cannot comply in a particular circumstance with this Order, such Party shall promptly inform the Receiving Party in writing why compliance with the Order is not reasonable or feasible. No Party may seek relief from the Court concerning compliance or non-compliance with the Order until it has met and conferred with the other Party in a good faith effort to resolve or narrow the area of disagreement.

## 12.     MODIFICATION

This Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

Dated: May 29, 2020

**ATTORNEYS FOR PLAINTIFF**

**ATTORNEYS FOR DEFENDANTS**

By: /s/ Malcolm Seymour
Andrew J. Goodman
Malcolm Seymour
Jeanne Barenholtz
**FOSTER GARVEY PC**
100 Wall Street, 20th Floor
New York, New York 10005
Tel: (212) 965-4534
Fax: (212) 334-1278

and

Martin P. Russo
Daniel Branower
**RUSSO PLLC**
350 Fifth Avenue, Suite 7230
New York, New York 10118
Tel: (212) 363-2000
Fax: (347 507-2378

By: /s/ Scott M. Kessler
Scott M. Kessler
**AKERMAN LLP**
666 Fifth Avenue, 20th Floor
New York, New York 10103
T: (212) 880-3800
F: (212) 880-8965

and

Jason S. Oletsky, *admitted pro hac vice*
**AKERMAN LLP**
Las Olas Centre II - Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, Florida 33301
T: (954) 463-2700
F: (954) 463-2224

and

Aaron Marks, P.C.
Farryal Siddiqui
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
T: (212) 446-4800
F: (212) 446-4900

*So Ordered:*

_____
DENISE L. COTE
UNITED STATES DISTRICT JUDGE

## APPENDIX A: ESI METADATA AND CODING FIELDS

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| BegDoc | Bates number of the first page of the document. | All | Prefix-0000000001 |
| EndDoc | Bates number of the last page of the document. | All | Prefix-0000000002 |
| BegAttach | Bates number of the first page of the first document of the document family. | All | Prefix-0000000001 |
| EndAttach | Bates number of the last page of the last document of the document family. | All | Prefix-0000000004 |
| PageCount | Number of printed pages in the document. | All | 2 |
| Company | Company affiliation of the document custodian(s) | All | ABC HoldCo, Inc. |
| Confidentiality Designation | Confidentiality designation, if any, of the document | All | Confidential<br>Highly Confidential |
| Custodian | Names of all custodians who possessed the document, including deduplicated values, in format: Last name, First name.<br><br>Where multiple individuals share first and last name, individuals should be distinguished by an initial which is kept constant between productions. For instance: Smith, John A. and Smith, John B.<br><br>For documents from centralized repositories where custodian name(s) are unavailable, identifying source information should be provided. | All | Doe, John; Smith, John; Smith, Jane |
| All Custodians | Names of all custodians who possessed the document. | ESI | |

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| Source | Source shall be used in connection with document obtained from third-Parties and identify the third-Party having provided the particular material.<br><br>If the third-Party's production of documents included individual custodian information, such information shall also be included in the "CUSTODIAN" field. | All (third-party documents only) | 3DP, Inc. |
| Subject/E-Subject | Subject line of an e-mail. | E-mails | Text of the subject line |
| To | All recipients that were included on the "To" line of the e-mail. | E-mails | John.Doe@e-mail.com |
| From | The name and e-mail address of the sender of the e-mail. | E-mails | Jane.Doe@e-mail.com |
| CC | All recipients that were included on the "CC" line of the e-mail. | E-mails | Bill.Black@email.com |
| BCC | All recipients that were included on the "BCC" line of the e-mail. | E-mails | ceo-gs@email.com |
| DateSent | Date an e-mail was sent. | E-mails | 01/01/2015 |
| TimeSent | Time an e-mail was sent. | E-mails | 12:30:00 |
| DateModified | Date the document was last modified. | E-attachments; | 01/01/2015 |
| TimeModified | Time the document was last modified. | E-attachments; Electronic documents | 12:30:00 |
| Last Modified By | Identification of user responsible for last modificationof document. | E-attachments; electronic documents | John Doe |
| DateCreated | Date the document was created. | E-attachments; Electronic documents | 01/01/2015 |

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| TimeCreated | Time the document was created. | E-attachments; Electronic documents | 12:30:00 |
| DateReceived | Date email was received. | E-mails | 01/01/2015 |
| TimeReceived | Time email was received. | E-mails | 12:30:00 |
| DateAccessed | Date document last accessed | Electronic documents; | 01/01/2015 |
| Date Last Saved | Date the document was last saved. | E-attachments; Electronic documents | 01/01/2015 |
| Redaction | Noting document contains redactions. | E-attachments; Electronic documents | Redacted |
| FileName | File name of original document. | Electronic documents; E-attachments | Microsoft Word 2007/2010 |
| File Type | Application type. | Electronic documents; E-attachments | Word |
| File Extension | The file extension of the document. | E- attachments; Electronic documents | .doc |
| NativeLink | Relative file path to each native file on the production media. | All documents produced in native format | \Natives\Document 12345.doc |
| Author | Document author/creater | E- attachments; Electronic documents | John Doe |

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| Title | Document Title | E- attachments; Electronic documents | Text of the title line |
| HASH | MD5 or SHA-1 Hash value | Electronic documents; E- attachments; E-mails | |
| Prod Volume | Production Volume | All | Defendant X Volume 1 |
| File Path | | | |
| AttachDocID | | Electronic documents; | |
| ATTACHNAME | | | |
| ATTACHRANGE | | | |
| CALENDAR MEETING START | | | |
| CALENDAR MEETING STOP | | | |
| MESSAGE ID | | | |
| TextPath | Relative file path to each extracted text/OCR text file on the | All | \Text\Document_12345.txt |